IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| WILLIAM M. CARTER, | ) | CIVIL ACTION 4:04-1299-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JO ANNE B. BARNHART | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment. (Doc. #11).

## I. PROCEDURAL HISTORY

The plaintiff, William M. Carter, filed applications for disability insurance benefits (DIB) on August 27, 2001, alleging disability since May 15, 2001, due to vascular problems, chronic obstructive pulmonary disease ("COPD"), a heart impairment and resulting limitations (Tr. 67, 80). His applications were denied initially, and a hearing before the Administrative Law Judge (ALJ), D. F. Billett, was held February 26, 2003 (Tr. 12-13, 25-64). On May 5, 2003, the ALJ issued a

decision that plaintiff was not disabled because he has retained the functional capacity (RFC) to perform medium work[1] that existed in the national economy (Tr. 12-20). On March 12, 2004, the Appeals Counsel denied plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (Tr. 5-7).

## II. FACTUAL BACKGROUND

The plaintiff, William M. Carter, was born on July 18, 1947, and was 55 years of age on the date of his hearing before the ALJ. Plaintiff has a high school education and past relevant work experience as a journeyman electrician for thirty-one years. (Tr. 28 ).

## III. DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1) Did the ALJ err by failing to properly assess the credibility of the plaintiff's testimony of his symptoms, including pain and other limitations?

(2) Did the ALJ err by failing to properly assess the residual functional capacity of the plaintiff?

(3) Did the ALJ err by not finding that the plaintiff met the criteria of medical listing section 4.04, ischemic heart disease?

(Plaintiff's brief).

In the decision of May 5, 2003, the ALJ found the following:

---

[1]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary or light work." 20 C.F.R. § 404.1567(c)(2004).

(1)   The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

(2)   The claimant has not engaged in any substantial gainful activity since his alleged onset of disability.

(3)   The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

(4)   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

(6)   The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

(7)   The claimant has the following residual functional capacity: lifting and carrying 50 pounds occasionally and 25 pounds frequently; no climbing; and no working at heights, or working around dust and fumes.

(8)   The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

(9)   The claimant is an "individual closely approaching advanced age" (20 CFR § 404.1563).

(10)  The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

(11)  The claimant has transferable skills from skilled work previously performed as described in the body of the decision (20 CFR § 404.1568).

(12)  The claimant has the residual functional capacity to perform a significant range of medium work (20 CFR § 416.967).

>    (13)   Although the claimant's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.29-31 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include medium jobs as electric backup (500 SC); electric sales associate (300 SC); and electronics assembler (1,000 SC/25,000 USA); and light jobs as sales associate (300 SC/5,000USA).
>
>    (14)   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(Tr. 14-20).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be

upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.

SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.

On May 9, 2001, plaintiff underwent an exercise stress test by Bimal R. Shah, M.D. for evaluation of myocardial ischemia. Dr. Shah concluded the test revealed excellent exercise tolerance and capacity with exercise-induced leg pain and fatigue suggestive of claudication. He further noted the plaintiff's test results were equivocal for ischemia and recommended further evaluation (Tr. 156-157). Plaintiff underwent coronary artery bypass graft surgery on May 16, 2001, performed by G. Lionel Zumbro, Jr., M.D. and discharged May 22, 2001 (Tr. 122-137).

On June 11, 2001, Dr. Shah examined plaintiff noting that he was doing better overall, and that his EKG showed normal sinus rhythm. He further noted that plaintiff's sternal wound was

healing very well, that his leg wound was still healing with some ulceration, and that he had some swelling of the right lower extremity. Dr. Shah recommended that plaintiff participate in cardiac rehabilitation, continue with his current medications, and stop smoking (Tr. 154).

Dr. Shah examined plaintiff again on July 26, 2001, in relation to complaints of fatigue, shortness of breath, weakness, and depression. An echocardiogram showed significant improvement in overall LV systolic function, and a chest x-ray showed normal heart size, evidence of chronic obstructive pulmonary disease. Dr. Shah noted plaintiff continued to smoke and had refused to undergo cardiac rehabilitation despite his strong recommendation. He also noted that plaintiff had not returned to work and was "thinking about disability." Dr. Shah reported an impression of atherosclerotic heart disease, peripheral vascular disease, COPD, and emphysema. He recommended another exercise stress test and prescribed Effexor, and stated: "As far as the disability is concerned, I will make my recommendations following the stress test" (Tr. 148-152).

On August 13, 2001, plaintiff underwent a stress test which Dr. Shah concluded to show "fair exercise tolerance and capacity with Functional Class II with maximum work load of 5 METS with no electrocardiographic or no perfusion abnormalities suggestive of myocardial ischemia"(Tr. 147). Dr. Shah did not state any recommendation as to his opinion if plaintiff should be considered disabled.

On August 30, 2001, Brian C. Erb, M.D., examined plaintiff in relation to complaints of easy fatigability and pain in his legs with activity. With regard to leg pain, Dr. Erb noted that plaintiff had a Doppler study which showed mild aortoiliac disease which was not critical, and that nicotine contributed to his symptoms. He noted that his stress test following bypass surgery had not shown significant ischemic disease, and that his primary pulmonary problem was continued smoking. Dr.

Erb also noted it did not appear that plaintiff would attempt to stop smoking in the near future (Tr. 172). On March 18, 2002, Dr. Erb examined plaintiff with regard to "several various complaints for which he believes he is disabled from employment." Dr. Erb noted plaintiff's medical problems included COPD, status post bypass surgery, a two-pack-per-day smoking habit, some lower extremity pain and coolness, and hand symptoms consistent with Raynaud's syndrome. Dr. Erb noted that plaintiff's hand symptoms might be attributable to smoking, and that a recent lower extremity Doppler study showed no critical stenoses. He noted that plaintiff's restless leg syndrome had improved considerable since beginning Sinemet each night, that he was not taking medication prescribed for COPD, and that he was no longer taking narcotic analgesics. Dr. Erb recommended an MRI of the brain to rule out any brain lesions and urged plaintiff to discontinue smoking (Tr. 169). Plaintiff stated that he could not stop smoking as long as his wife continued smoking in their house (Tr. 170). On September 30, 2002, plaintiff returned complaining of general malaise, easy fatigability, and chest heaviness intermittently. Dr. Erb noted plaintiff had gone to the emergency room a few weeks ago but no abnormalities were found on EKG or lab testing. Dr. Erb found plaintiff had no significant edema, regular heart rhythm, decreased breath sounds, and normal renal function, electrolytes, and hemoglobin. Dr. Erb recommended stress testing noting that "a major problem is his continued smoking of up to two and a half packs per day." He also noted that Oxycontin might be contributing to plaintiff's symptoms (Tr. 224-225).

On October 2, 2002, plaintiff underwent a second stress test in which it was noted that his exercise time of five minutes and fifty seconds is equivalent to four METS. The test was discontinued due to severe leg and knee pain. It was noted that the "EKG is equivocal for evidence of ischemia." (Tr. 219). The myocardial perfusion study revealed a "mostly fixed apical and inferior

wall defect with a small area of redistribution noted." (Tr. 219). Dr. Shah's conclusion was "the exercise stress test reveals fair exercise tolerance and capacity with perfusion abnormalities suggestive of a small area of myocardial ischemia. Recommend continued current maximum medical therapy." (Tr. 219-220).

On February 4, 2002, plaintiff complained to Dr. Michael S. Haynes of University Medical Associates-Pulmonary, of breathlessness with exertion. Plaintiff reported he was unable to walk more than a mile, and that before his surgery he had been able to walk almost indefinitely. He also reported smoking two-and-one-half packs of cigarettes per day. Dr. Haynes found the results of plaintiff's pulmonary function study were compatible with mild obstruction and mild restriction. He noted primary diagnoses of obstructive lung disease and restrictive lung disease, provided a sample of inhaled medication, and encouraged plaintiff to stop smoking (Tr. 165-166).

Plaintiff was also treated by Dr. John Downey, Sr., a pain management specialist, for multiple-site pain. (Tr. 16). In a report dated July 18, 2002, Dr. Downey's impression included neuropathic pain, peripheral neuropathy affecting his legs, and possible occipital neuralgia. The neuromuscular examination and muscle testing revealed weakness of the right C6 myotome and bilateral L5 myotome, reflexes were hypoactive in the distal lower extremities and toes downgoing. The palpatory examination revealed tenderness over the multifidus, sacroiliac joint, and over the occipital triangles bilaterally. (Tr. 215-216). These diagnoses were confirmed by EMG studies performed on August 6, 2002. (Tr. 209-217).

## V.  ARGUMENTS

Plaintiff asserts that the ALJ failed to properly assess the credibility of his testimony relating to his symptoms, including pain and other limitations, under SSR 96-7p. Plaintiff argues that on page 4 of the ALJ's decision, there is one paragraph stating the requirement to assess credibility and one paragraph after that where the ALJ partially describes some of plaintiff's symptoms and testimony of pain and then partially describes some of the objective findings he believes discredits the plaintiff. Plaintiff contends that the ALJ did not address all of his symptoms, including pain, fatigue, difficulty walking or standing, difficulty lifting, difficulty with maintaining his concentration, and difficulty with shortness of breath. Plaintiff asserts that the ALJ erred in finding that his heart condition is stable. Plaintiff argues that the stress test performed on August 13, 2001, and again October 2, 2002, both indicated that he could only exercise for a time equivalent to five (5) METS or four (4) METS, and that both tests were discontinued due to severe leg pain, knee pain, and shortness of breath.

Plaintiff further argues that the ALJ failed to properly assess his residual functional capacity in contradiction to SSR 96-8p. Plaintiff asserts that it is undisputable that he suffers from advanced COPD, coronary artery disease, peripheral vascular disease, peripheral neuropathy, with additional symptoms of pain and weakness in his legs, general fatigue and shortness of breath. Plaintiff argues that there are numerous medical documents to substantiate his impairments. Plaintiff asserts that the ALJ has not provided a narrative discussion describing how the evidence supports his conclusion and fails to follow the requirements of SSR 96-8p where he must provide a narrative discussion on how the evidence supports each conclusion he reached.

Defendant asserts that the ALJ properly evaluated plaintiff's subjective complaints. Defendant contends that the evidence showed plaintiff's heart condition was stable, he had no severe back problems, no significant mental impairment, and that his pulmonary problems would improve after he stopped smoking. Further, defendant argues that plaintiff's failure to comply with treatment, particularly his persistent heavy smoking against medical advice, was inconsistent with his subjective complaints of disability.

As to plaintiff's residual functional capacity, defendant argues that the records of plaintiff's treatment showed that following his bypass surgery, he recovered and his condition stabilized. Further, defendant contends that no treating or examining physician stated that plaintiff was disabled or placed specific restrictions on his activity. Defendant asserts that even though Dr. Shah did not translate his findings from the stress test into specific work-related limitations, two state agency physicians did consider his conclusion and found that plaintiff could perform medium work with no climbing of ropes, ladders, or scaffolds, more than occasional climbing of ramps and stairs, nor concentrated exposure to fumes, gases, etc. Thus, defendant asserts that there was sufficient evidence under the substantial evidence standard to support the ALJ's finding.

In assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). A claimant's allegations of pain itself or its severity need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be

expected to cause the pain the claimant alleges she suffers.  A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

As to allegations of pain, the Fourth Circuit has often repeated that, "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness and effusion." Craig, 76 F.3d at 592 (identifying two-step process by which ALJ must first determine if the claimant has demonstrated by objective medical evidence an impairment capable of causing the pain alleged and if so, must then assess the credibility of the claimant's subjective accounts of pain); Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990).

The Commissioner has promulgated Ruling 96-7p to assist ALJ's in determining when credibility findings about pain and functional effect must be entered, and what factors are to be weighed in assessing credibility.  The Ruling directs that,

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  *This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects . . .*
>
> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

. . .

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Ruling 96-7p (emphasis added).

The Fourth Circuit has recognized that it is especially critical that the ALJ assess a plaintiff's credibility as to accounts of pain. As the court stated in Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989) (citations omitted):

> [i]t is well settled that: '[t]he ALJ is required to make credibility determinations--and therefore sometimes make negative determinations--about allegations of pain or other nonexertional disabilities . . . . But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, . . . and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process.

In his decision, the ALJ concluded that:

> At the hearing, the claimant appeared and testified that he last worked in May 2001. Claimant testified that he lacks energy and that his legs hurt. He complained that his memory was pretty bad. He complained of problems walking and that he spends most of the day sitting. Both he and his wife have quit smoking. Medical evidence reveals that the claimant's heart condition is stable but that he has significant pulmonary problems. There are no signs of lumbar radiculopathy. He is taking Neurontin for his neuropathy. He has no significant mental impairment. Effexor is of assistance. Accordingly, the undersigned

>finds the claimant retains the following residual functional capacity: lifting and carrying 50 pounds occasionally and 25 pounds frequently: no climbing; and no working at heights, or working around dust and fumes.

(Tr. 17).

The ALJ failed to give specific findings supported by specific evidence of record to find the plaintiff's testimony not credible. There is objective medical evidence that plaintiff has medically diagnosed conditions which could certainly bring about the pain and limitations he testified to at the hearing such as pain in his legs, shortness of breath, and daily fatigue. The ALJ more or less gave a conclusory statement. The court will not, however, speculate on a barren record devoid of the appropriate administrative analysis. In the absence of specific reasons being identified by the ALJ for rejecting plaintiff's subjective accounts of pain and restriction on daily living, the court is unable to complete the review mandated by law. For example, the court is uncertain whether the ALJ discredited plaintiff's symptoms because they were unsupported by objective medical evidence (in contravention of Ruling 96-7p), because he did not believe plaintiff's subjective accounts that he experiences the amount of pain and limitations to the extent alleged or to the degree of functional limitation maintained.

Because the ALJ did not give specific findings supported by specific evidence of record to find the plaintiff's testimony not credible, this case is to be remanded for proper consideration and explanation of findings as to the plaintiff's subjective complaints considered with the medical evidence. On remand, the Commissioner can address these issues in accordance with Ruling 96-7p and <u>Craig v. Chater</u>, <u>supra</u>.

Further, the undersigned concludes that the ALJ failed to provide an appropriate rationale with specific references to the evidence of record in assessing plaintiff's limitations in deciding his maximum residual functional capacity. After discussing the conclusory reasons why he found plaintiff not to be credible, the ALJ summarily stated that plaintiff retains the residual functional capacity to perform a significant range of medium work in which he could lift and carry 50 pounds occasionally and 25 pounds frequently, no climbing, no working at heights, or working around dust and fumes. The ALJ fails to give an analysis as to the medical evidence related to plaintiff's physical condition.

Next plaintiff argues that the ALJ committed reversible error by not finding that he met the criteria of Medical Listing Section 4.04, Ischemic heart disease. Plaintiff argues that it is clear from both stress tests that plaintiff suffers from Ischemic heart disease, along with additional abnormal findings documented in Listing 4.04.

Defendant asserts that the ALJ did not err in finding that plaintiff did not meet the requirements of Listing 4.04. Defendant states "It is obvious from a review of Listing 4.04 that whether a claimant's stress test results meet the Listing's requirements is a complex question of medical science. Plaintiff's counsel's lay interpretation of plaintiff's stress test results in relation to the criteria of the Listing does not merit serious consideration." (Defendant's memorandum).

The undersigned has reviewed Listing 4.04 and concurs with defendant that it is a "complex question of medical science" as to whether plaintiff's stress test results meet the Listing's requirements. Thus, upon remand, there should be an interpretation made of plaintiff's stress test by his treating physician as to whether or not he meets the requirements of Listing 4.04.

## VI.  CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. However, based on the decision submitted by the ALJ, the Court would have to speculate on the basis upon which his decision rests. We are confined to determine whether there is substantial evidence to support his decision and cannot conduct a *de novo* review.

Accordingly, IT IS ORDERED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

Sept. 19, 2005
Florence, South Carolina